**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

_____

| | |
|---|---|
| **SAMUEL L. DIXON, JR., on behalf of** | ) |
| **himself and others similarly situated,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )      **No. 2:08-cv-02746-STA-cgc** |
| | ) |
| **MAXIMUM SECURITY SERVICE,** | ) |
| **LLC, a Tennessee Limited Liability** | ) |
| **company,** | ) |
| | ) |
| **Defendants.** | ) |

_____

**BENCH MEMORANDUM**
_____

On October 30, 2008, Plaintiff Samuel L. Dixon, Jr. ("Dixon") brought this action for

unpaid overtime compensation, declaratory relief, and other relief under the Fair Labor

Standards Act (the "FLSA"), as amended, 29 U.S.C. § 216(b), against his employer Defendant

Maximum Security Service, LLC ("Defendant").  (D.E. # 1.)  Defendant filed an Answer in this

case on March 10, 2009.  (D.E. # 10.)  In the Answer, Defendant admitted that Dixon was

employed as an hourly paid security guard and performed related duties for the Defendant in

Shelby County, Tennessee.

On April 15, 2009, Cesley M. Brown ("Brown") and Billy R. Howard ("Howard") filed

Plaintiffs' Notice of Consent to Join. (D.E. # 17 & 18.)  Likewise, on May 4, 2009, Veleshia

Clark ("Clark") and Eddie Thompson ("Thompson") filed Plaintiffs' Notice of Consent to Join.

(D.E. # 23 & 24.)  A few months later, Keva Fleming ("Fleming") also filed Plaintiffs' Notice of

Consent to Join.  (D.E. # 26.)

On October 4, 2010, the Court held a Pretrial Conference in this matter.[1]  At the Pretrial Conference, Plaintiffs' attorney was present.  Plaintiffs' attorney stated that she has had no contact with the Defendant.  Additionally, Plaintiffs' attorney asked that the jury demand be waived.  The Court instructed Plaintiffs to file a pretrial order by close of business on October 9, 2010, including within that order a request for a bench trial.  Plaintiffs complied and a Non-Jury Trial was set for October 19, 2010.

On October 19, 2010, the Court held the Non-Jury Trial.  Defendant's owner, Damien Dodson, appeared in the courtroom; however, he was unable to present testimony on behalf of Defendant as he was not a named party and not an attorney.  The Non-Jury Trial was then continued and finished on December 9, 2010.  During the Non-Jury Trial, four of the six Plaintiffs testified–Samuel Dixon, Billy Howard, Keeva Fleming, and Eddie Thompson.  The other two Plaintiffs Cesley Brown and Veleshia Clark were absent from the proceedings on both days, and, for that reason, the Court will not address their claims.

Following the trial, Plaintiffs filed proposed findings of fact and conclusions of law.  Federal Rule of Civil Procedure 52 requires that, "[i]n an action tried on the facts without a jury . . . , the court must find the facts specially and state its conclusions of law separately."[2]  In

---

[1]  Prior to the Pretrial Conference, on September 28, 2010, this Court issued an Order to Show Cause ordering the parties to show cause as to why this case should not be dismissed for failure to comply with the Court's Setting Letter.  According to the Setting Letter, the parties were to have furnished chambers with a proposed joint pretrial order, motions in limine, and proposed jury instructions by 4:30 p.m. on September 27, 2010.  Neither party complied with the Setting Letter.

[2] Fed. R. Civ. P. 52(a)(1).

accordance with this Rule, the Court finds and states the following:

## FINDINGS OF FACT

The facts presented by each Plaintiff at trial are as follows:

<u>Samuel Dixon, Jr.</u>

Dixon is a certified armed security officer.  Defendant hired Dixon on October 30, 2007, and Dixon began working for the Defendant that night.  Dixon was told that Defendant would attempt to give him forty (40) hours per week of work–if not more.  Dixon's weekly schedule fluctuated according to the assigned post.  Defendant paid Dixon bi-weekly at an hourly rate of $10 per hour.  His pay rate did not change during his employment with the Defendant.

Dixon guarded businesses, apartment complexes, churches and schools for Defendant.

When Dixon received his first pay check, he learned that he was not receiving overtime pay.  Dixon spoke with someone in the company about not receiving overtime pay, and the person notified him that they could not afford to pay overtime.

Approximately fifty (50) people worked for Defendant.  Each security guard earned approximately $25,000-$27,000 per year.  Payroll was approximately $1,250,000 per year. Additionally, at least two people worked in the Defendant's office ordering materials to help complete tasks and processing payroll.

Dixon's last day at work was May 4, 2008.  From pay period November 4, 2007 to May 11, 2008, Dixon worked four hundred and sixty two (462) hours over a forty (40) hour work week.  Dixon was paid $10 per overtime hour on each pay check.  Dixon was owed $15 per overtime hour on each pay check.  Dixon is seeking the additional $5 per hour for overtime pay plus liquidated damages.  Dixon is also seeking liquidated damages.

PROPOSED CALCULATION OF DAMAGES

Back wages:          462 overtime hours worked x $5 =  $2,310
Liquidated damages:                                    $2,310

                                        Total:    $4,620

<u>Billy Howard</u>

Howard is a certified armed security officer.  Defendant hired Howard in September of 2007, and Howard began working for Defendant in September of 2007.  Howard was told Defendant paid an hourly rate of $10.  Overtime pay was not mentioned.

Howard worked a "set post."  His schedule was from 3:00 p.m. to 3:00 a.m. five days a week.  So, Howard generally worked sixty (60) hours per week.

Howard learned that he was not receiving overtime pay when he received his first paycheck.  A "Mr. Brown" told Howard that they did not pay overtime.  When Howard stated that if he had known that information, he would not have gone to work for the Defendant, Mr. Brown responded that Howard could either work or quit.  Howard continued to work.

In January 2008, Howard received a $0.25 raise bringing his hourly rate to $10.25.

A minimum of fifty (50) people worked for the Defendant.  Average security guard earned approximately $25,000 to $27,000 per year.  The company had office staff that performed general office duties and utilized office materials and tools necessary.

Howard last worked for Defendant in November 2008.

From pay period September 2007 to December 2007 (17 weeks), Howard worked twenty (20) hours per week overtime.  Howard was paid $10 per overtime hour on each pay check.  Howard was owed $15 per overtime hour on each pay check.  Howard is seeking the additional $5 per hour for overtime pay.

4

From pay period January 2008 to November 2008 (42 weeks), Howard worked twenty (20) hours per week overtime. Howard was paid $10.25 per overtime hour on each pay check. Howard is seeking the additional $5.125 per hour for overtime pay.

Howard is also seeking liquidated damages.

PROPOSED CALCULATION OF DAMAGES:

September 2007 to December 2007
     20 hours overtime per week x $5 = $100 overtime pay owed per week
     $100 x 17 weeks = $1700

January 2008 to November 2008
     20 hours overtime per week x $5.125 = $102.50 overtime pay owed per week
     $102.50 x 42 weeks = 4,305

| | | |
|---|---|---|
| Back Wages: | $1700 + $4305 = | $6,005 |
| Liquidated Damages: | | $6,005 |
| | Total | $12,010 |

Via affidavit, Howard additionally testified that, as some of Defendant's clients required armed guards, Defendant required him to carry a gun while on duty. Howard testified that, while on duty, he carried a Ruger P85 9mm automatic pistol. Howard further testified that he was informed by Top Brass in Millington, Tennessee, where he purchased the weapon, that the pistol was believed to be manufactured in Tucson, Arizona. Furthermore, Howard noted that he used other items as a security guard including handcuffs, pepper-spray, a flashlight, and a cell phone. Moreover, Howard testified that Defendant sold and provided certain security supplies to the security guard employees including batons, handcuffs, and flashlights.

<u>Keva Fleming</u>

Fleming is a certified armed security officer. Fleming began working for Defendant in April 2007. Fleming told Defendant she needed at least forty (40) hours per week and Fleming

5

was told that for that work she would earn $10 per hour.  There was no discussion of overtime

pay.  Fleming assumed overtime pay was automatic.

 Fleming was assigned a regular schedule 3:00 p.m. to 3:00 a.m. seven days a week.

Thus, she worked eighty four (84) hours per week.

 Fleming learned that she was not receiving overtime pay when she received her first

paycheck.  When Fleming then asked about overtime, she was told that Defendant was not

paying overtime at the moment.

 In October 2007, Fleming received a $0.50 raise bringing her hourly rate to $10.50.

 Fleming's employment ended in September 2008.

 From pay period April 2007 to September 2007 (30 weeks), Fleming worked forty-four

(44) hours per week overtime.  Fleming was paid $10 per overtime hour on each pay check.

Fleming was owed $15 per overtime hour on each pay check.  Fleming is seeking the additional

$5 per hour for overtime pay.

 From pay period October 2007 to September 2008 (44 weeks), Fleming worked forty-

four (44) hours per week overtime.  Fleming was paid $10.50 per overtime hour on each pay

check.  Fleming is seeking the additional $5.25 per hour for overtime pay.

 Fleming is also seeking liquidated damages.

PROPOSED CALCULATION OF DAMAGES

April 2007 to September 2007
44 hours of overtime per week x $5 = $220 overtime pay owed each week
$220 overtime pay owed each week x 30 weeks = $6,600

October 2007 to September 2008
44 hours of overtime per week x $5.25 = $231 overtime pay owed each week
$231 overtime pay owed each week x 44 weeks = $10,164

6

|  |  |
|---|---|
| Back wages: | $6,600 + $10,164 = $16,764 |
| Liquidated damages: | $16,764 |
| | Total     $ 33,528 |

Via affidavit, Fleming additionally testified that, as some of Defendant's clients required armed guards, Defendant required her to carry a gun while on duty.  Fleming testified that, while on duty, she carried a Ruger P85 9mm automatic pistol.  Fleming further testified that she purchased this pistol new at American Loan Pawn in Memphis, Tennessee, and that this pistol was manufactured in Tucson, Arizona.  Fleming notes that she also purchased certain security supplies from Top Brass in Millington, Tennessee including, but not limited to, a bullet-proof vest, batons, handcuffs, and flashlights, which she used to perform her job as a security guard for Defendant.

<u>Eddie Thompson</u>

Thompson is a security officer.  Thompson began working for Defendant on April 29, 2007.  Thompson was told that he would be paid weekly and receive $10 per hour.  When Thompson asked about overtime pay, the supervisor told him that Defendant does not pay overtime.

Thompson worked forty-five (45) hours per week from April 2007 to January 2009. After January 2009, the number of hours Thompson worked decreased, so he did not work any overtime.  Thompson filled out time sheets.  He kept one time sheet for himself and gave one copy to the Defendant.

Thompson was paid $10 per overtime hour on each pay check.  Thompson is owed $15 per overtime hour on each pay check.  Thompson is seeking the additional $5 per hour for overtime pay.  From pay period April 2007 to January 2009, Thompson worked four hundred

and thirty hours over a forty (40) hour work week.  Thompson is also seeking liquidated damages.

PROPOSED CALCULATION OF DAMAGES

| | | |
|---|---|---|
| Back wages: | 430 overtime hours worked x $5 = $ 2,150.00 | |
| Liquidated damages: | $ 2,150.00 | |
| | Total | $ 4,300.00 |

Via affidavit, Thompson additionally testified that, as some of Defendant's clients required armed guards, Defendant required him to carry a gun while on duty.  Thompson testified that, while on duty, he carried a Smith and Wesson 9mm pistol.  Thompson further testified that he purchased this pistol from Top Brass on Mt. Moriah Road in Memphis, Tennessee and that he was informed and believes that the pistol was manufactured in Maine or Massachusetts. Thompson notes that he also used other items as a security guard employee for Defendant, such as handcuffs, pepper-spray, a flashlight, and a cell phone.

In summation, Dixon is seeking damages in the total amount of $4,620.00; Howard is seeking damages in the total amount of $12,010.00; Fleming is seeking damages in the total amount of $33,528.00; and Eddie Thompson is seeking damages in the total amount of $4,300.00.  In addition, Plaintiffs are seeking reasonable attorneys' fees and costs in an amount to be determined by this Court.

## CONCLUSIONS OF LAW

"Congress enacted the [FLSA] . . . 'to compensate those who labored in excess of the statutory maximum number of hours for the wear and tear of extra work.'"[3]  Specifically, 29

---

[3] *Wood v. Mid-America Management Corp.,* 192 F. App'x 378, 379 (6th Cir. 2006) (quoting *Bay Ridge Operating Co. v. Aaron,* 334 U.S. 446, 460 (1948)).

U.S.C. § 207 of the FLSA states:

> Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

Here, Plaintiffs seek protection under the second of these two coverage options provided by the FLSA.

The second option, enterprise coverage, attaches to a business where it is an "[e]nterprise engaged in commerce or in the production of goods for commerce."  This is defined at 29 U.S.C. § 203(s)(1) as an enterprise that:

> (A)(i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and
>
> (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated)[.]

It is important to note that "[c]ourts have consistently construed the FLSA liberally to apply to the farthest reaches consistent with congressional directs."[4]

---

[4] *Kowalski v. Kowalski Heat Treating, Co.,* 920 F.Supp. 799, 803 (N.D. Ohio 1996) (citing *Tony & Susan Alamo Foundation v. Secretary of Labor,* 471 U.S. 290, 296 (1985)). See also *Jacobs v. New York Foundling Hosp.,* 577 F.3d 93, 99 n.7 (2d Cir. 2009) ("We note that the existence of FLSA enterprise coverage is a two-step determination, and the Employees must ultimately prove both steps.  That is, an employer must not only be an 'enterprise' under § 203(r)(1), it must also be an '[e]nterprise engaged in commerce or in the production of goods for commerce' as defined in § 203(s).  The latter requirement is rarely difficult to establish, however, because it is met by showing that two or more employees have 'handl[ed] . . . materials that have been moved in . . . commerce[.]'")

9

Plaintiffs submit that Defendant was a covered enterprise under the FLSA.  Plaintiffs state that Defendant is covered by the FLSA because Defendant regularly and customarily had two (2) or more employees handling "materials" that had previously moved in interstate commerce and because Defendant's annual gross volume of sales made or business done was in excess of $500,000.

Recently, the Eleventh Circuit has explained that:

> Whether an item counts as "materials" will depend on two things: 1) whether, *in the context of its use*, the item fits within the ordinary definition of "materials" under the FLSA and 2) whether the item is being used commercially in the employer's business.[5]

The Eleventh Circuit defined "materials" under the FLSA as "tools or other articles necessary for doing or making something"[6], and further stated that for an item to count as "materials" it "must have a significant connection with the employer's commercial activity."[7]  The Eleventh Circuit summarized these definitions by stating that:

> [F]or the purposes of the FLSA's handling clause, an item will count as "materials" if it accords with the definition of "materials"-tools or other articles necessary for doing or making something-in the context of its use and if the employer has employees "handling, selling, or otherwise working on" the item for the employer's commercial (not just any) purposes.[8]

Here, Plaintiffs were all armed security guards.  Via affidavit, Howard, Fleming, and

---

[5] *Polycarpe v. E&S Landscaping Service, Inc.,* 616 F.3d 1217, 1225-26 (11th Cir. 2010).

[6] *Id.* at 1226.

[7] *Id.*

[8] *Id.* at 1227.

10

Thompson stated that Defendant required them to carry a handgun while on patrol as a security officer.  Moreover, Howard and Fleming each stated that their handguns were manufactured in Arizona, and Thompson stated that his handgun was manufactured in either Maine or Massachusetts.  Plaintiffs used these handguns for Defendant's commercial purpose of providing armed security services to its clients.  Consequently, Plaintiffs argue that because Defendant employed two or more employees who, in their jobs as security guards, handled materials that had previously been moved in interstate commerce, the Defendant is an enterprise covered under the FLSA for all times relevant to this cause.  Defendant has failed to present any evidence or arguments to the contrary.

Considering the evidence before it, the Court finds that the Plaintiffs' handguns are "materials" within the definition of the FLSA, in that they are "articles necessary for doing something" (providing security for clients) and the Court further finds that the employees were handling the handguns for the employer's commercial purposes (providing security for clients). Therefore, the Court agrees with Plaintiff–the Defendant has met the criteria necessary to satisfy the first prong for enterprise coverage.

As to the second prong, Plaintiffs' testimony regarding income, the number of employees that worked for Defendant, and Dixon's testimony that payroll amounted to approximately $1,250,000 per year establishes, to the Court's satisfaction, that the Defendant had an annual gross revenue in excess of $500,000.00 during the period of time relevant to Plaintiffs' claims. As the Plaintiffs point out, if the annual gross revenue had been less than $500,000.00 during this period, the Defendant could not have covered payroll alone.  Thus, the Court finds that Defendant has satisfied the second prong necessary to meet the criteria for enterprise coverage,

and, as such, the Court finds enterprise coverage is established on this record.

Following, Plaintiffs assert that because Defendant did not pay Plaintiffs at one and one-half times their regular rate for the work hours exceeding forty per week, they are entitled to damages pursuant to 29 U.S.C. § 216(b).  Section 216(b) states that:

> Any employer who violates . . . section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.

Plaintiffs argue that Defendant is liable for both the amount of their unpaid overtime compensation and an additional equal amount as liquidated damages.

The Court finds Plaintiffs entitled to both the unpaid overtime compensation amount and an additional equal amount as liquidated damages.  As noted above, Plaintiffs have testified to the amount of damages, and Defendant has provided no rebuttal evidence.  Therefore, the Court finds each Plaintiff entitled to their unpaid overtime compensation amount.  Further, according to the Sixth Circuit, an employer seeking to avoid an award of liquidated damages under the FLSA bears the heavy burden of proving both good faith and reasonableness.[9]  Here again, the employer has presented no evidence.  Consequently, the Court finds that each Plaintiff is entitled to an additional equal amount of unpaid overtime compensation as liquidated damages.

Plaintiffs also seek attorneys' fees and costs.  According to 29 U.S.C. § 216(b), "[t]he Court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."  Thus,

---

[9]  *Dole v. Elliot Travel & Tours, Inc.,* 942 F.2d 962, 967 (6th Cir. 1991) (citing *Marshall v. Brunner*, 668 F.2d 748, 753 (3d Cir. 1982)).

Plaintiffs' request for attorneys' fees and costs is granted.  Plaintiffs shall submit within fifteen (15) days of the date of this order a motion for attorneys' fees and costs supported by proper documentation.  The Court will then determine the amount of fees and costs to be awarded.

## CONCLUSION

Based on the foregoing, the Court enters judgment for the Plaintiffs.  The Court finds Defendant liable to Samuel Dixon, Jr. for the amount of $4,620.00; to Billy Howard for the amount of $12,010.00; to Keva Fleming for the amount of $33,528.00; and to Eddie Thompson for the amount of $4,300.00.  The Court will award attorneys' fees and costs by separate order.

**IT IS SO ORDERED.**

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT COURT

Date:   June 3, 2011.